This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39976**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ISAAC LAUSHAUL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**James Waylon Counts, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Melanie C. McNett, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Isaac Laushaul appeals his convictions of trafficking a controlled substance in violation of NMSA 1978, Section 30-31-20 (2006), and conspiracy to traffic a controlled substance in violation of Section 30-31-20 and NMSA 1978, Section 30-28-2 (1979), which occurred in separate trials in 2018 and 2019. He advances two primary arguments on appeal. First, Defendant argues that comments made by the prosecutor during the State's rebuttal closing argument in the second trial amount to fundamental error and require reversal. Second, Defendant claims that he received ineffective

assistance of counsel in the first trial while arguing that evidence seized during his arrest should have been suppressed. For reasons set forth below, we affirm.

## DISCUSSION

### I.    Comments During Closing Argument

**{2}**    Defense counsel did not object to the comments now challenged on appeal, which were made during the State's rebuttal closing argument. Where counsel fails to object to an allegedly improper comment during closing, "the appellate court is limited to a fundamental error review." *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. "Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial, and we will reverse a conviction despite defense counsel's failure to object." *Id.* ¶ 35. "To find fundamental error, we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted). "[W]e will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.* Three factors "carry great influence in our deliberations: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.* ¶ 26. "These three factors are useful guides, but in the final analysis context is paramount. Where evidence of guilt is overwhelming, or an improper statement is corrected by counsel or the court, reversible error is less likely." *Id.* ¶ 34.

**{3}**    During rebuttal closing argument, the prosecutor stated the following:

[Defense counsel] ha[s] now presented you with three different defenses, three totally different defenses that aren't in the same path. And why do they stand up here and just start throwing defenses out with no evidence, nothing to support it? Because that's what they get paid to do. They are not interested in the truth. They are not interested in anything to do with actually bringing the evidence and the facts to the light of day, exposing their client to the actual justice for what they did. Not interested in it. Their job is to throw mud and see what sticks, see if they can get you to do exactly what we talked about in voir dire [that] you are not supposed to do, which is, think of ways to acquit . . . Defendant. Again, go back to those questions. No evidence for all three of those questions. All of them denied, but they are just throwing them out there to see what sticks, to see if you will violate your oath as jurors, ignore the evidence on the stand, and acquit . . . Defendant. That's why they do it. But, ladies and gentlemen, go back and look at the case.

We need not analyze these comments too closely to determine their impropriety. "[I]t is improper for the prosecutor to imply that defense counsel has fabricated evidence or otherwise to portray defense counsel as the villain in the case." *State v. Torres*, 2012-NMSC-016, ¶ 19, 279 P.3d 740 (internal quotation marks and citation omitted). "Regardless of the circumstances . . . an attorney is never exempt from treating opposing counsel with respect or permitted to denigrate adversaries, especially in front of a jury." *Id.* ¶ 23. "This behavior has no place in the courtroom, and reflects negatively on the profession as a whole." *Id.* The prosecutor here insinuated that defense counsel was paid to lie to the jury or to otherwise obfuscate the truth. His comments were, therefore, beyond the bounds of acceptable remarks before a jury.

**{4}** Nonetheless, our analysis must remain focused on fundamental error, which turns on whether Defendant was deprived of a fair trial. *See Sosa*, 2009-NMSC-056, ¶ 35. Reviewed in context of the whole trial, the prosecutor's comments were relatively minor compared to the evidence against Defendant, and nothing indicates that such comments tipped the scales to the extent that the trial became unfair. The State produced six witnesses who testified against Defendant, two of whom were the undercover officer and an unwitting intermediary who facilitated the transaction, Rehanna Chavez. The undercover officer testified extensively about the entirety of the drug deal including his interactions with Chavez, a phone call Chavez had with Defendant immediately before Chavez left the officer's vehicle, and his personal observations of Defendant's vehicle during the exchange. Chavez testified about her past relationship with Defendant including previous drug transactions she had with him. Chavez further testified about receiving money from the undercover officer for the purpose of purchasing methamphetamine from Defendant and calling Defendant immediately before the drug deal to verify that he was in a dark-colored Kia that arrived late to the transaction. Chavez then told the jury how she left the officer's vehicle, got into Defendant's Kia, and purchased drugs from him. The officer who stopped the Kia immediately after the drug deal also testified about finding Defendant in the passenger seat and arresting him. A subsequent search of the vehicle revealed a stack of cash placed next to the passenger seat of the Kia that contained several bills with serial numbers matching those on the money the undercover officer gave to Chavez. The State also admitted a video of the undercover officer's entire interaction with Chavez and photographs of the money taken from the Kia.

**{5}** The evidence against Defendant is overwhelming, which undermines reversal under *Sosa*. *See id.* ¶ 34. Regarding the *Sosa* factors, Defendant argues that the prosecutor's comments invaded his constitutional rights to a presumption of innocence and due process. While we do not dispute that this is a reasonable inference from the prosecutor's statements, these comments only indirectly implicate such rights, the jury was properly instructed that Defendant was presumed to be innocent and the State bore the burden of proof, and the comments "did not touch on the elements the jury was required to find in order to convict Defendant." *See Torres*, 2012-NMSC-016, ¶ 12. The prosecutor's attack was directed at defense counsel, not Defendant himself. "Although the jury's perception of counsel's honesty and professionalism certainly has the potential to play a role in whether or not the jury ultimately finds evidence elicited by

counsel to be credible, the prosecutor's comment here is not equivalent to commenting on the credibility or character of a witness, or questioning the veracity of [the d]efendant himself." *Id.* ¶ 13. The evidence admitted against Defendant pertaining to the elements of the offenses for which he was charged simply outweighed any prejudicial effect the prosecutor's statements may have had.

**{6}** In addressing the final two *Sosa* factors, we note that the prosecutor's comments were limited to this one instance. The State made no other effort, throughout the entirety of the proceeding, to implicate counsel's veracity or otherwise offer improper argument to the jury. Finally, while we cannot say that defense counsel invited the insinuation that she lied to the jury—nor do we suggest that counsel ever invites such an argument— some of the State's comments are responsive to Defendant's exculpatory theories his counsel offered in closing. "It is permissible to comment on a defendant's failure to produce witnesses if the comment is not one on the defendant's failure to testify." *State v. Aguayo*, 1992-NMCA-044, ¶ 37, 114 N.M. 124, 835 P.2d 840.

**{7}** For the above reasons, we determine that the prosecutor's comments did not so prejudice Defendant that he was deprived of a fair trial. "Only in the most exceptional circumstances should we, with the limited perspective of a written record, determine that all the safeguards at the trial level have failed. Only in such circumstances should we reverse the verdict of a jury and the judgment of a trial court." *Sosa*, 2009-NMSC-056, ¶ 25.

## II.      Ineffective Assistance of Counsel

**{8}** A claim of ineffective assistance of counsel is reviewed de novo. *State v. Martinez*, 2007-NMCA-160, ¶ 19, 143 N.M. 96, 173 P.3d 18. When evaluating such claims, "we require [the d]efendant to show, first, that his counsel's performance was deficient and, second, that this deficiency prejudiced his defense." *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. "When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record." *Id.* If necessary facts are not contained in the record, such a claim may be "more properly brought through a habeas corpus petition." *Id.*

**{9}** Defendant was arrested for suspicion of trafficking illicit drugs during a "buy-bust" operation in which an undercover law enforcement officer gave money to an intermediary, Chavez, who, in turn, took that money into the Kia containing Defendant and then returned to the officer with several ounces of methamphetamine. Immediately after the exchange, Defendant was stopped in the Kia by police and placed under arrest. The subsequent search of the vehicle, conducted pursuant to a warrant, revealed a stack of folded cash placed between the center console and the passenger seat that contained several bills, identified by their serial numbers, matching those the undercover officer gave to Chavez.

**{10}** Defendant later filed a motion to suppress the money found during the search, arguing that the police lacked probable cause to seize, and later search, the vehicle.

After a hearing, however, the district court denied his motion, finding that Defendant lacked standing to challenge the search because he was merely a passenger in the vehicle and, therefore, did not have a reasonable expectation of privacy inside it. Defendant now argues that he received ineffective assistance of counsel during the hearing because of his attorney's misapprehension of the law regarding standing. During the suppression hearing, defense counsel argued that Defendant had standing to challenge the search merely because he was the subject of a police investigation. Defendant now claims, without support in the record, that he had a reasonable expectation of privacy in the vehicle because his wife owned it at the time of his arrest. He asserts that his attorney's failure to introduce this fact into evidence, or to otherwise pursue this line of argument, amounts to ineffective assistance of counsel.

**{11}** "To show prejudice, we look to the record to determine whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Garcia v. State*, 2010-NMSC-023, ¶ 41, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted). Defendant points to no evidence in the record supporting his assertion that his wife owned the Kia at the time of his arrest. We cannot accept such an assertion as true absent evidence supporting it. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). Defendant may, however, advance this claim through a habeas corpus petition. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition." *Roybal*, 2002-NMSC-027, ¶ 19. Because Defendant relies on facts not in evidence to advance his argument, this claim is more properly brought through a habeas corpus petition.

## CONCLUSION

**{12}** Accordingly, we affirm.

**{13}** **IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**KATHERINE A. WRAY, Judge**